CHRIST SCHAWACKER, Respondent, v. FRANCIS H. LUDDINGTON, Garnishee, JOHN DEMPSEY, Interpleader, Appellant.

St. Louis Court of Appeals, February 27, 1900.

1. **Garnishment in Aid of an Execution**: ANSWER TO GARNISHEE: UNDER SECTION 3459 R. S. 1899. Plaintiff Schawacker, garnished Luddington as the creditor of Dennis J. and John Dempsey; Luddington answered, whereupon the court entered this order: "On motion of the garnishee herein by attorney, it is ordered by the court, that John Dempsey show cause, if any he have, on Wednesday, November 4, 1896, before Thomas A. Russell, Judge of Division No. 7 of this court at ten o'clock in the forenoon, why he should not interplead herein." John Dempsey filed interplea, which plaintiff answered. The issue made thereby was submitted to a

Schawacker v. Dempsey.

jury and found for plaintiff. Held, that the answer of the garnishee was made under the provisions of section 3459 Revised Statutes 1899, and that the issues originated by the interplea and answer thereto were properly triable, as was done in this case, which resulted favorably to plaintiff.

2. ———: ———: ———: SECTION 3441, R. S., 1899. Under section 3441, Revised Statutes 1899, third persons may interplead as to property attached in the hands of the garnishee, while in the case of property thus taken by execution, there is no such right.

3. ———: ———: ———: ORDER TO INTERPLEAD BY COURT. If a garnishee discloses in his answer as was done in this case, that the debt owing by him to defendant has been sold or assigned to a third person, and plaintiff contests the validity of such assignment, the court then shall make an order upon such assignee to appear and sustain his claim to the property or debt, which the assignee did, and the issues made by his interplea and answer thereto, although in aid of an execution and not of a writ of attachment, be tried, and judgment rendered in favor of the successful party.

4. ———: ———: ———: INSTRUCTIONS EMBRACED WITHIN THE PLEADINGS. Instructions should be confined to the pleadings, and while they may be obnoxious to criticisms for being too broad, and not within the issues made by the pleadings, yet unless the error is prejudicial to the opposing party, it will not be reversible error.

5. ———: ———: GRANTING OF A NEW TRIAL: NEWLY DISCOVERED TESTIMONY: DISCRETIONARY. The granting of a new trial on account of newly discovered testimony, and for surprise on account of the testimony of a witness, or for any other reason, is largely within the discretion of the trial court, and unless there has been an abuse of it, appellate courts will not interfere.

Appeal from the St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

AFFIRMED.

*E. T. Farish* and *R. P. Williams* for interpleader.

But if such judgment had been pleaded, the court was entirely without jurisdiction in the case. And

therefore the motion made and filed by interpleader on April 26, 1899, to dismiss the case for want of jurisdiction of the subject-matter, should have been sustained.   This was a garnishment on execution, and it is the settled law of this state that an interplea will not lie to reach funds in the hands of a garnishee on execution.   16 Mo. 252; Wolf v. Vette, 17 Mo. App. 36.   And the same doctrine is reaffirmed in Brown et al. v. Gummersell, 30 Mo. App. 341.   And the reason for this law is that no such right of interpleading existed at common law and a party seeking such remedy had to proceed in equity.   The statute (sec. 572) makes provision for an interpleader where property, money or effects or credits have been attached and the same statute in the same words is re-enacted in section 5226.   By those two sections alone is the right or authority given.   And section 5242 only provides the mode of procedure.   It does not give or confer the right.   But such right is restricted to garnishment under attachment as provided by sections 572 and 5226, which are identically the same.   This section 572 is like section 571, authorizing attachment creditors to maintain an action for the purpose of setting aside fraudulent conveyances and which is held to be strictly statutory.   27 Mo. App. 160.   In the case of Harmon v. Menke, 73 Mo. App. 39, it is said: "The difficulty with both proceedings is that the plaintiff has undertaken to reach the alleged equities of Belleville in the debt by a statutory garnishment.   This could not be done. There is no equity in the statute.   It is purely a legal remedy.   The plaintiff should have instituted a proceeding in equity in the nature of an equitable garnishment.   In such a suit it would be the duty of the court to bring the interested parties before it and make such decree as the equities of the case demand, to the end that all parties might be protected in their just rights.   Pendleton v. Perkins, 49 Mo. 565; Pickens v. Dorris, 20 Mo. App. 1; Heege v. Fruin,

*supra.* The judgment of the circuit court dismissing both garnishments will be affirmed. All the judges concur." Hitherto it has been supposed that the issues to be raised in a cause had to be raised alone by the pleadings, and could not be enlarged either by the evidence, or the instructions, nor indeed by both combined. Bank v. Armstrong, 62 Mo. 59. "As this case must be retried it is proper to say that the subject-matter to the assignment herein, money due or to become due, to the assignor under a contract with him, does not bring it within the purview of either section 5172 or section 5178 of the revision of 1889. These sections relate to tangible or corporeal property, not to mere accounts or choses in action which may be assigned by transfer and notice to the debtor. And as it is only under those two provisions or one or the other thereof, that assignments were required to be recorded, or that where the property transferred exceeds in value the debt sought to be secured, that the same might be considered as a badge of fraud, the court's instructions aforesaid were not only erroneous, but in the very teeth of the decision of the court of appeals in this case. The attack made upon the assignment in this case was based upon section 5170, and as the matter in question was a chose in action, the law requiring the assignment to be recorded did not apply. McGee v. Riddlesberger, 39 Mo. 365.

*William B. Thompson* and *Ford W. Thompson* for respondent.

(1) There seems to be no provision in garnishment proceedings for an interpleader to come in of his own motion and claim the fund, although he may have that right under attachment proceedings; but there is an entirely different state of affairs where the garnishee invites him to come in, as it were, by setting out in his answer the fact that he is unwilling to pay over the money at his peril for the reason

that he believes the fund in question has been assigned to
another, and asking that he be brought in, and be required
to state what claim, if any, he may have.    This requirement
is entirely statutory and is provided for by section 5242 of
the Revised Statutes of 1889, and which section of the stat-
ute is a complete and full answer to the entire point made by
the interpleader.    The reason of the decisions upon this
point, that the interpleader can not come in of his own
motion, seems to be, as Judge Rombauer states it in the case
of Wolff v. Vette, 17 Mo. App. 36, that no provision for such
a proceeding has been made, following the decision of Judge
Gamble in the case of Wimer v. Pritchartt, 16 Mo. 252.
"The statute authorizing the sheriff to summon the debtor of
defendant as garnishee upon execution makes no provision
for any third party interpleading to claim the assets in the
hands of the garnishee and for a very good reason.    The
garnishee is summoned, as himself a debtor of the defendant,
and as such debtor to the defendant, it is to his interest to see
that he does not pay the debt which he owes him, unless he is
in fact in debt to him.    If he is in doubt as to the person to
whom he is indebted, he has the means of bringing in all
persons having an interest in the question, in order to have it
determined, and thus relieve himself from both doubt and
liability."    Every debtor has a right to pay his debt if he
wishes to do so, without being required to permit another to
interplead for it, but when he is garnished by a judgment
creditor of his creditor, he has an option either to pay over
the amount due, and take his chances upon being required to
pay it again to his creditor, or, upon stating his reasons, and
the doubt in which the facts have placed him, ask or invite
the person whom he supposes to have an interest in the mat-
ter to come in and state it, and thus free him from all lia-
bility.    Had the interpleader not been invited to come in, we
are quite willing to agree with him, that he could not have

forced himself upon us, but now that he is in and has asked that the garnishee pay the money into court, if he wishes to withdraw, we are quite sure that such action will be acceptable to us, and perhaps equally agreeable to the garnishee, since by directing him to pay the money into court he has absolved him from liability in the premises. Section 5242, Revised Statutes of 1889; Rice v. Dudley, 34 Mo. App. 383; Groschke v. Bardenheimer, 15 Mo. App. 353; McKittrick v. Clemens et al., 50 Mo. 160. (2) The court will notice, however, that no intimation of this surprise was given, or not even the least mention of it made during the trial of the case, but that after the interpleader had taken the chance of a verdict, he now comes in and makes the point for the first time. A leading case on the question of surprise here in this state, is that of Albert v. Seiler, 31 Mo. App. 247, wherein it is laid down, as a general rule, "that each party must understand his case and come prepared to meet the case made by his adversary. Therefore a party can not be surprised that his adversary introduces testimony in support of the issues made by the pleadings even though such testimony is false. Again, in the case of Lavoni et al. v. Brasher et al., 46 Mo. 345, "a plaintiff, after the verdict, can not have a new trial on account of having been surprised by evidence of defendant; he should suffer a nonsuit, after which he may sue again on the same cause of action. Lindauer v. Meybrig, 27 Mo. App. 181; Bragg v. City of Moberly, 17 Mo. App. 221; Haynes New, Trial, par. 79. If a party be surprised by an unforseen occurrence at the trial, he should make his misfortune known to the court instantly, and ask for a reasonable postponement to enable him to produce the countervailing proof. If he can relieve himself from his embarrassment in any mode, either by a nonsuit or by a continuance, or the introduction of other testimony, or otherwise, he must not take the chance of a verdict, but must at

once fortify his position by resorting to all available modes of present relief. Shallbournce v. Ball, 29 Cal. 608; Delmar v. Martin, 39 Cal. 559; James v. Mut. Reserve Fund Life Ass'n, 148 Mo. 1.

BLAND, P. J.—On June 1, 1896, D. J. Dempsey entered into a contract with Francis H. Luddington to do all the work and furnish all the materials in the reconstruction of building No. 20 North Main street, for $850.

And on June 15, 1896, said D. J. Dempsey entered into another contract to do all the work and furnish all the materials required, in the reconstruction of building known as No. 6 North Commercial street for $2,500.

On the first day of July, 1896, when the said work was incomplete and the most of the work thereof remained yet to be done, D. J. Dempsey, in consideration of John Dempsey assuming the completion of the said contracts, and for other considerations especially agreed between said D. J. Dempsey and John Dempsey, said D. J. Dempsey assigned and set over to said John Dempsey all moneys then owing or to become owing by said Luddington for said work and materials to be done and furnished to said contracts.

Said assignment was delivered to Luddington on the first day of July, 1896, and he accepted the same. And from that on recognized said John Dempsey alone as the party authorized to do and perform said work, or to control the same.

The other considerations mentioned in the assignment were evidenced by an agreement of the same date therewith, and executed on that day, by said D. J. Dempsey and John Dempsey, and it appeared thereby that D. J. Dempsey had given his promissory note for $550 in favor of Mrs. M. Bollman; that he had given his two notes in favor of Buxton & Skinner Printing Co. for over $300, and that he was indebted

to S. J. Fisher & Co., $372, and that John Dempsey assumed the payment of all these notes and debts aforesaid, and assumed all trouble and liability and expenses in completion of the contracts aforesaid. And agreed to pay for all labor and materials required to complete said contracts.

Under the said contracts and the assignment thereof aforesaid, the work was completed on the twentieth day of July, 1896, and after paying all materialmen and labor, except for any work that D. J. Dempsey and John Dempsey themselves had performed, there was a balance in the hands of said Luddington of $1,516.47.

On the said twentieth day of July the said Luddington was garnished under an execution in favor of Christ Schawacker against Dennis J. Dempsey and William Dempsey, and on October 16, 1896, the said Luddington filed his answer herein, and on the same day the plaintiff filed his reply to said answer. On October 21, the following order was made in said cause:

"On motion of the garnishee herein by attorney, it is ordered by the court, that John Dempsey show cause, if any he have, on Wednesday, November 4, 1896, before Thomas A. Russell, Judge of Division No. 7 of this court at ten o'clock in the forenoon, why he should not interplead herein."

And on November 4, said John Dempsey filed his interplea herein, in which he stated that the said money so alleged to be garnished in the hands of said Luddington is not and was not the property of said D. J. Dempsey.

That prior to the service of the garnishment on said Luddington said D. J. Dempsey assigned all his right and interest in said money or indebtedness to said John Dempsey, interpleader.

On November 9, 1896, the plaintiff, in answer to the interplea of said John Dempsey, denied each and every alle-

gation therein contained, and further answered as follows:

"And for further answer to said interplea of said John Dempsey, plaintiff states that said John Dempsey, at the time of the service of the garnishment in this cause, had no interest or right in the moneys due and owing by said Francis H. Luddington to the said Dennis J. Dempsey under the reconstruction contracts mentioned in the answer of said garnishee, and that the assignment made by the said Dennis J. Dempsey to said John Dempsey, set forth in the said interplea, was made to hinder, delay and defraud this plaintiff, and that said Dennis J. Dempsey made, executed and delivered said assignment for the purpose of hindering, delaying and defrauding this plaintiff, and that the said John Dempsey, who is a brother of said Dennis J. Dempsey, knew the purpose and intent of the said Dennis J. Dempsey in executing the said instrument was to hinder, delay and defraud plaintiff herein, and further knew that the said Dennis J. Dempsey was insolvent, and being so insolvent, made, executed and delivered the said instrument in writing for the purpose of hindering, delaying and defrauding plaintiff herein.

"Plaintiff further states that the said John Dempsey was employed by the said Dennis J. Dempsey, and continued in his said employ, and had no interest in any matter or thing connected with the said contracts, but was simply used by the said Dennis J. Dempsey as the pretended assignee of the said contracts; nor was there any sum of money paid to the said John Dempsey for the execution of the said assignment, nor did the said John Dempsey pay out any sum for any material or labor furnished in the construction of the said buildings, but that the amount due and owing by the said Francis Luddington is the profit arising under the said contracts to the said Dennis J. Dempsey.

"Plaintiff states that by reason of the insolvency of the said Dennis J. Dempsey, and by reason of the fraud in the

execution of the said assignment, that the said John Dempsey is not entitled to any sum of money in the hands of the said garnishee.

"Wherefore plaintiff prays judgment for the money confessed in the hands of said garnishee, and for such other and further relief in the premises as to the court may seem meet and proper."

There was evidence that after the assignment to John Dempsey, he took charge of the work and completed it. There was also evidence that after the assignment John Dempsey was seldom seen about the buildings, and that the work went on as before under the supervision of Dennis J. Dempsey, and that he, under a power of attorney from John Dempsey, receipted for payments on the contracts by Luddington. Neither Mrs. M. Bollman, the Buxton & Skinner Printing Company, nor S. J. Fisher & Company, were ever informed that John Dempsey had assumed and agreed to pay Dennis J. Dempsey's indebtedness to them, nor did either of them ever agree to look to John Dempsey for payment. It was also in evidence that one McLaughlin had paid the Buxton & Skinner Printing Company's claim, and about $325 of Mrs. Bollman's note, for both of which debts he was surety to Dennis J. Dempsey. John Dempsey paid nothing to Dennis J. Dempsey for the contracts, and had not to the day of trial paid a dollar on any of the debts he assumed to pay. On his cross-examination, the following questions and answers appear in the bill of exceptions:

"Q. If you don't know what your brother's intentions were, as you now state you did not, why did you say on direct examination, in answer to questions, that he did intend to protect the creditors mentioned in said agreement? A. As far as I know that was his reason. Q. What was it to protect these creditors from? A. As far as I know, a judgment. Q. What judgment? A. I would suppose Mr.

Schawacker's judgment. Q. These creditors you mentioned in your direct examination had no judgment against your brother, had they? A. Not that I am aware of. They may have, but I don't know. Q. Then how would they be protected by this assignment? A. That I don't know; I suppose that would be for the court to decide. Q. The first object of the assignment was to prevent Schawacker from getting hold of the Luddington money, was it not? A. I suppose that was the object. Q. In this transaction, then, you had no financial interest whatever, paying nothing therefor, nor on the contracts assigned to you, except by orders as you have above testified, but took the assignment as you have stated for the benefit of your brother, Dennis, and at his suggestion? A. Yes, sir. Q. I understand by your answer to the last question, 'Yes, sir,' that you had no financial interest in the transaction? A. Yes, sir."

The verdict and judgment were for plaintiff, from which John Dempsey, the interpleader, duly appealed.

I.    Appellant contends that the circuit court was without jurisdiction to try the interplea, for the reason he asserts, that an interplea will not lie to reach funds in the hands of a garnishee on execution.    Section 3441, Revised Statutes of 1899 of the Garnishment Act, enacts that "any person claiming property, money, effects or credits attached in the hands of a garnishee, may interplead in the cause, as provided by law in attachment cases * * *."   The right to interplead in attachment cases was first enacted by the Missouri Territorial Legislature in 1818, and has been continued without material change in every revision of the general statutes made since the admission of the state into the Federal Union. But no statute can be found anywhere in the legislation of the state giving the right generally to interplead in garnishment proceedings on an execution issued from a circuit court. In Wimer v. Pritchartt, 16 Mo. 252, Judge Gamble speaking

for the court, uses the following language: "The statute, authorizing the sheriff to summon a debtor of the defendant as a garnishee upon an execution, makes no provision for any third party interpleading to claim the assets in the hands of the garnishee, and for a very good reason. The garnishee is summoned, as himself a debtor to the defendant, and it is a matter of sufficient interest to him, to see that he is not required to pay the debt of the defendant if he is not a debtor to the defendant. If he is in doubt as to the person who is his creditor, he has the means of bringing in all persons having an interest in the question, and having it determined so as to relieve himself from doubt or responsibility. The judgment then rendered in this case, in favor of the interpleader Lewis, was erroneous, and is reversed." In Straus v. Rothan, 41 Mo. App. loc. cit. 610, Judge Thompson, writing the opinion, says, that "under section 2525, Revised Statutes 1879 (identical with section 3441, *supra*), third persons may interplead as to property attached in the hands of the garnishee, while, in the case of property thus taken in execution, there is no such right." Wimer v. Pritchartt, *supra*, is approvingly referred to in Wolff v. Vette, 17 Mo. App. loc. cit. 37. But the answer of the garnishee in this case comes under the express provisions of section 3459 Revised Statutes 1899, which provides that, an interplea may be filed and provides for the very proceedings that were had in this cause.

II. The answer of plaintiff to the interplea alleged that the assignment was made for the purpose of hindering and delaying the plaintiff in the collection of his judgments. The instructions given told the jury that if the assignment was made to hinder or delay creditors, etc. Appellants contend that the instruction is broader than the pleadings, and for this reason erroneous. The issues in a cause are raised by the pleadings. In this cause they were raised by the

interplea and the answer thereto. Instructions should be confined to the pleadings, and are erroneous if they submit issues not raised by the pleadings, or expand the ·issues so made to cover allegations not embraced or fairly intended to be embraced in the pleadings. Christian v. Insurance Com· pany, 143 Mo. 469; Bank v. Armstrong, 62 Mo. 59. The instructions are obnoxious to the criticisms made by appellants, but the error is not a prejudicial one, since the evidence, if it proves fraud at all, proves that the plaintiff was the only creditor intended to be defrauded.

III. The evidence did not tend to prove that McLaughlin had paid all or so much of plaintiff's judgment as to reduce it below the amount paid in by the garnishee, and there was no error in refusing defendant's instruction telling the jury that if they found that McLaughlin had paid the judgment, they should find for the interpleader.

IV. One of the grounds set out in the motion for new trial was surprise by a part of the testimony of plaintiff, and newly discovered testimony, which impeached that part of plaintiff's testimony by which appellant was taken by surprise. The interpleader's deposition was taken in Kansas. Plaintiff was present when the deposition was taken, and he testified in substance that he had a private conversation with the interpleader on the occasion, in which conversation the interpleader admitted to him (witness), that the assignment was made to him, for the purpose of preventing plaintiff from getting anything out of the building contracts. Affidavits of all the persons present at the taking of the deposition were filed in support of the motion. By these affidavits it appears that no such conversation took place at the time and place testified to by plaintiff, and that no private conversation whatever was had on that occasion between plaintiff and John Dempsey. That the granting of a new trial on account of newly discovered testimony, and for surprise on account

of the testimony of a witness, or for any other reason, is largely within the discretion of the trial judge, and appellate courts will not interfere with the exercise of this discretion, unless there has been abuse of it; is well-settled law in this state. Schawacker, as to the admissions, he testified were made to him by John Dempsey, impeached himself. No jury who heard his cross-examination on this part of his testimony in chief could give it any credence; to further impeach this testimony would be but cumulative evidence. But John Dempsey in his deposition on cross-examination practically admitted, under oath all that Schawacker testified that he admitted to him in private conversation, and the evidence as a whole leaves but little room to doubt that the assignment was made without consideration, and for the express purpose of defeating plaintiff in the collection of his judgment, and that John Dempsey had full knowledge of its purpose and entered into the agreement with his brother for the purpose of perpetrating the fraud on plaintiff. No good purpose, therefore, could have been served by granting a new trial, since a retrial in all probability would have resulted as this did. Under all the evidence the judgment is for the right party, and will be affirmed. It is so ordered. All concur.